**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TYRIK McCLELLAN,

    Petitioner,

v.

CASE NO. 2:08-CV-10735
HONORABLE BERNARD A. FRIEDMAN
UNITED STATES DISTRICT JUDGE

MILLICENT WARREN,

    Respondent.
_____/

**OPINION AND ORDER GRANTING EVIDENTIARY HEARING**

Tyrik McClellan, ("Petitioner"), confined at a Michigan correctional facility, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Wayne Circuit Court jury trial conviction for first-degree murder, and possession of a firearm during the commission of a felony. The petition also requests an evidentiary hearing to support the claim that Petitioner's trial counsel was ineffective for failing to call a number of eye-witnesses at trial. Because Petitioner was diligent in his efforts to obtain a hearing in the state courts, and because some of his claims cannot be adjudicated based on the existing record, the Court will order that an evidentiary hearing be conducted.

**I. Background**

Petitioner's convictions arise from the shooting death of Iva Nathan Auld outside a downtown Detroit bar in the early morning hours of December 20, 2001. Many of the essential facts were not in dispute at Petitioner's trial. There was an altercation inside the bar between two groups of men. Both groups were asked to leave the bar. The altercation

1

continued outside, and Petitioner shot Auld four times, killing him. The question at trial was whether the shooting occurred in self-defense.

The evidence presented at trial consisted of the testimony of several men from Auld's group, two security guards, and the medical examiner. No defense witnesses were called at trial.

Auld's companions gave relatively consistent accounts of the confrontation. While Auld and his group were in the bar taking a group picture, some the men from Petitioner's group started yelling insults. Fred Hill, one of the men from the victim's group was upset enough that he had to be calmed down. The altercation occurred close to closing time, and so the two groups were escorted out of the bar separately. Auld's group left first, and Petitioner's group left a few minutes later. Outside the bar, Hill retrieved a metal rod from a car and confronted Petitioner's group as they were leaving the bar. Petitioner drew a pistol and held it at his side. One of the men from Petitioner's group announced "first person who throws a punch, start busting (shooting)," and then he knocked-out Hill with a single punch. The two groups started to tussle, and then Petitioner shot the victim four times.

Joseph Richardson testified that after Hill was knocked-out, Auld "tussled" with Petitioner for about 20-to-30 second and then fell backwards. Richardson did not see Auld make any threatening gestures towards Petitioner other than the tussling, and he heard the gunshots before Auld fell to the ground. Richardson testified that Petitioner was against wall when he fired, but that he could have retreated down the adjacent alley.

James Puriefoy testified that he made it as far as the car with Hill and Mandel Mays when he noticed that the other members of the group had not made it to their cars.

2

Puriefoy saw Hill get out of the car and head back to the bar, and Puriefoy and Mays followed him. Puiefoy testified that Hill then squared off with someone from Petitioner's group. That individual announced, "first person throw a punch start busting." Puriefoy looked to see who was holding a gun, and saw that Petitioner was holding one. Puriefoy then saw Petitioner back-peddle towards the parking lot and heard shots. Puriefoy did not see anyone else with a weapon beside Petitioner. He did not see Auld do anything threatening before the shots were fired, and he testified that Auld was not moving towards Petitioner when he was shot. Puriefoy testified that the shots were spaced about one second apart.

Kevin Thompson testified that he heard Puriefoy yell "he's got a gun." Thompson saw Hill fall down, and then he heard shots being fired. He did not see anyone with a weapon.

Leonard Strickland testified that he left the bar with Auld and Hill. A person from Petitioner's group punched Hill and knocked him to the ground. The individual then announced "whoever swings first, start shooting." Strickland began tussling with someone from Petitioner's group. He heard someone say "he's got a gun, he's got a gun, let's go," and then he heard gunfire. Strickland never saw anyone with a weapon.

Mays testified that he drove Hill and Puriefoy to the bar. He placed a security club for locking the steering wheel in the back seat of his car. After they reached May's car, Hill went into the back seat and then ran out of the car towards the bar. Mays followed him. The groups of men converged and someone knocked out Hill. He heard the individual who punched Hill say "if anybody move, blast all of them," and two seconds later he heard shots. He also heard someone from Petitioner's group say that Auld's group had guns.

Fred Hill admitted that he retrieved the club from Mays's car and took it back the bar. He testified that he had a verbal confrontation with Petitioner's group, but threw the club down just before he was knocked out. Hill did not remember anything after he was punched.

Two employees of the bar also testified regarding their observations. Dwight Stephenson testified that he was a security guard and did not know any of the men involved. He testified about the argument occurring inside the bar, and that the two groups of men were escorted out separately. It looked to Stephenson like it was Auld's group that came back towards the bar and started arguing again with Petitioner's group. Stephenson saw an individual from Petitioner's group emerge from the bar, take off his coat, tighten his cap, and announce at least three times, "first one that swings, start busting." He then punched Hill once, knocking him out.

Stephenson then saw Auld "rush" Petitioner's group, but he did not make contact. Petitioner had his gun drawn, but before Auld could grab his arm, Petitioner fired. Stephen testified that Auld "was falling. . . it looked like as he was trying to get away, he slipped, and it looked like he was falling before he even got shot" T II, at 136. Stephenson testified that the shots were fired after the victim was already on the ground, and he saw the sparks on the concrete. Stephenson could see Auld's hands, and because Auld was only wearing a tee-shirt, he could see that Auld did not possess any kind of weapon. Although Petitioner was backed up to the wall before he shot Auld, Stephenson testified that he could have escaped: "the person that did the shooting wasn't going anywhere. He meant to shoot him." T II, at 153.

Stephenson also testified that he patted-down every patron of the bar, and that no

4

one had a gun inside the building. Accordingly, Stephenson reasoned that Petitioner must have obtained the gun after he left the bar.

Niko Simmons testified that he also worked at the bar. He testified that he saw Hill retrieve the metal rod from a car, put it in his trousers, and approach the bar. While Hill began arguing in front of the bar, two more men from Petitioner's group came out of the bar. One of the men said, "first mother f----r swings, start busting," and then he knocked Hill out. Simmons did not see anyone take the metal rod from Hill after he was knocked out. Simmons then saw Petitioner step back and rack a round into the chamber of his gun. Auld tried to grab the gun or swing at Petitioner. Petitioner was standing at the end of a wall, almost in an alley, when Auld was punching at him and trying to get the gun. Petitioner stepped back a few feet, creating a little separation, and then he shot Auld.

The only other testimony came from the medical examiner. Dr. Boguslaw Pietak testified that Auld had four gunshot wounds. The lethal shot entered Auld's upper left rear shoulder and exited his front right upper chest. The track of this wound was from back to front and from left to right. Pietak testified that the victim was not facing the shooter when this wound occurred. The remaining wounds were to Auld's legs and entered the victim's body at differing angles. Dr. Pietak could not determine the order that the wounds were inflicted, and he could not determine the position of the body when the victim was shot. He did testify, however, that the victim's body must have been in motion during the shooting.

No one from Petitioner's group was called to testify, and Petitioner did not testify in his own defense.

Based on this evidence, Petitioner was convicted of first degree murder and two firearm offenses. Following sentencing, Petitioner appealed his conviction in the Michigan

5

Court of Appeals. His appellate brief raised three claims:

>   I. The evidence was insufficient to establish the elements of premeditation and deliberation for first-degree murder.
>
>   II. The prosecutor committed misconduct by his remarks in opening statement and closing argument.
>
>   III. The jury instructions regarding the order of deliberations was erroneous.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. McClellan*, No. 245097 (Mich. Ct. App. May 25, 2004). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court that raised the same issues, but the application was denied by form order. *People v. McClellan,* No. 126502 (Mich. Sup. Ct. Dec. 29, 2004).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised three claims:

>   I. Petitioner was denied the effective assistance of counsel.
>
>   II. There was cumulative error that rendered Petitioner's trial unfair.
>
>   III. Trial counsel was ineffective for offering a self-defense argument without presenting any witnesses to support it.

Petitioner also filed a motion for an evidentiary hearing to support his claims of ineffective assistance of counsel. The trial court denied the motion by an opinion dated July 19, 2006. The opinion appears to base the denial of relief based on Petitioner's failure to demonstrate cause and prejudice under Mich. Ct. R. 6.508(D)(3). The opinion also appears to deny Petitioner relief with respect to his ineffective assistance of counsel claim on the ground that the failure to call witnesses is necessarily a matter of trial strategy that is not subject to review.

Petitioner then retained his present counsel and appealed the decision of the trial court to the Michigan Court of Appeals. The application requested, as an alternative request to relief, that the case be remanded to the trial court for an evidentiary hearing. The application and request for a hearing were supported by four affidavits.

Calvin Guinn stated in his affidavit that he was with Petitioner at the bar. He saw the victim come toward Petitioner and Guinn outside the bar during the fight. The victim had his hand in his coat, as if he was holding a gun. After Petitioner shot the victim, Guinn saw a gun fall from the victim's body as he fell to the ground. Petitioner's affidavit states that "when the deceased continued to come at me pulling from his waistband a chrome object I believe[d] in fact was a handgun, I fired several shots in fear of my life." Diallo and Ramu McClellan stated in their affidavits that Petitioner was not searched before he entered the bar, and that Petitioner did not retrieve the weapon before the shooting.

Petitioner's application for leave to appeal was denied "for lack of merit in the grounds presented." *People v. McClellan*, No. 279129 (Mich. Ct. App. Aug. 30, 2007). Petitioner's subsequent application for leave to appeal filed in the Michigan Supreme Court was denied for failure "to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D)." *People v. McClellan*, No. 134866 (Mich. Sup. Ct. Dec. 28 2007).

Petitioner's application for habeas relief raises the claims that he presented to the state courts, including his ineffective assistance of counsel claim. The petition also requests that the Court hold an evidentiary hearing.

7

## II. Analysis

Rule 8 of the Rules Governing § 2254 Proceedings sets forth the procedure a district court must employ when determining whether to conduct an evidentiary hearing. Under Rule 8, "the judge must review the answer, any transcripts and records of state-court proceedings, and any [other] materials . . . to determine whether an evidentiary hearing is warranted." The decision whether to conduct an evidentiary hearing under Rule 8 falls within the Court's discretion. *Alley v. Bell*, 307 F.3d 380, 389 (6th Cir. 2002). In deciding whether to grant the hearing the Court must consider whether the grounds Petitioner alleges are sufficient to secure his release from custody and relevant facts are in dispute. *See Washington v. Renico*, 455 F.3d 722, 731 (6th Cir. Mich. 2006).

Petitioner raises substantial, potentially meritorious, ineffective assistance of trial and appellate counsel claims. Petitioner's defense at trial was self-defense, and his counsel supported the argument through the cross-examination of the prosecution witnesses. Viewed most favorably to Petitioner, though, the evidence at trial showed that the victim charged Petitioner with a metal rod in his hand. If believed, the proffered testimony of Calvin Guinn would have placed a pistol in the victim's hand that disappeared from the scene after the shooting. Not only would this testimony better support a self defense claim, but because only members of the victim's group remained after the shooting, it also might have been used to suggest that they removed the victim's weapon before the police arrived and impacted their credibility.

Furthermore, the prosecutor supported his argument that Petitioner acted with premeditation and deliberation by suggesting that Petitioner must have retrieved his gun

from a car just before the shooting because Petitioner had been patted-down for weapons when he entered the bar. The proffered testimony of Ramu and Diallo McClellan that Petitioner was not searched and possessed the gun the entire evening, at a minimum, would have arguably supported an argument that Petitioner was guilty of only second-degree murder.

There is no indication in the record why these witnesses were not called. Because Respondent has not filed copies of any of the trial court materials, the Court cannot determine which, if any, of the missing witnesses were listed on the prosecutor's witness list. Respondent implies in its answer, without citation to the record, that Guinn was listed but not called because he could not be located by the police at the time of trial. Respondent's Answer, at 26-27. The Court can find no such representation in the record. At the beginning of trial, defense counsel stated that he did not anticipate calling any witnesses. And at the close of the state's case, the prosecutor simply states: "The remaining witnesses on the witness list are being waived because they would be cumulative to those who have already testified." T II at 250. Defense counsel did not respond to this representation. But if the statements in Guinn's affidavit are to be believed, his testimony would not have been cumulative; it would have arguably supported Petitioner's self defense in a manner that counsel could not accomplish through mere cross-examination of the victim's friends.

Petitioner also claims ineffective assistance of appellate counsel. The claim is relevant to the adjudication of Respondent's procedural default defense that claims Petitioner should have raised his trial counsel claim during his appeal of right. Petitioner has proffered two letters that were apparently sent to appellate counsel that arguably

provided counsel with the basis for investigating the potential of raising such a claim. But there is no indication in the record why appellate counsel did not raise a claim regarding trial counsel's failure to call these witnesses.

The Court cannot decide before hearing testimony adduced at an evidentiary hearing whether trial counsel's conduct was the result of reasonable trial strategy or whether appellate counsel's failure to raise certain issues on appeal was the result of reasoned consideration or was outside the realm of reasonably competent assistance. S*ee Strickland v. Washington*, 466 U.S. 668 (1984). Because Petitioner's claims, if established, may be sufficient to warrant habeas corpus relief, the Court finds the interests of justice warrant an evidentiary hearing on the issues of ineffective assistance of trial and appellate counsel.

Respondent argues in his answer that Petitioner is barred from obtaining a hearing under 28 U.S.C. § 2254(e)(2). A habeas petitioner may introduce new evidence in support of a claim "only if [the prisoner] was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed in § 2254(e)(2) were met." *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004). A prisoner is at fault in failing to develop the evidence if there is a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). The required diligence is "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Id. at 435.

A review of the history of Petitioner's case in the state courts reveals that he was diligent in his attempt to develop the factual record for his claims. Petitioner, through appointed counsel, filed an appeal of right in the Michigan Court of Appeals. Neither his

10

present ineffective assistance of trial counsel nor the ineffective assistance of appellate counsel claims were raised in the Michigan Court of Appeals. Accordingly, Petitioner did not file any pleadings in the Michigan Court of Appeals requesting an evidentiary hearing on these claims. However, Petitioner has attached to his petition two letters that he sent to his appellate attorney. In one letter, Petitioner asked his appellate counsel to investigate the failure of Calvin Guinn to testify at trial when he was on the prosecutor's witness list. He states in the letter, "this person would have testified to the truth of what happened that night, so all the blame wouldn't have been on me and show I was not the aggressive one in the situation." Petitioner's Exhibit I, at 1. Petitioner's uncle also apparently sent a letter to appellate counsel, stating "one witness (Calvin Guinn) in the photo was arrested at home, harassed and threaten by the police. He was released after 12 hours, never charged with anything, [and] coerced into giving a statement. The prosecutor and the defense attorney knew where all witnesses live in the photo, but failed to depose or subpoena." Petitioner's Exhibit I, at 4. There is no indication in the record whether appellate counsel investigated these potential leads or considered raising issues related to this information, or on the other hand, whether he made a legitimate strategic decision after investigation not to raise any issues associated with these witnesses.

On April 4, 2006, Petitioner filed a motion for relief from judgment in the trial court, raising his ineffective assistance of trial and appellate counsel claims. He also filed a motion requesting an evidentiary hearing. Respondent has not filed any Rule 5 material from the state trial court, so it is not clear that Petitioner supported his motions with any affidavits. Petitioner claims that the state courts "refused to conduct an evidentiary hearing, even when confronted with supporting affidavits of Calvin Guinn, Diallo McClellan, and

Ramu McClellan." Brief in Support of Petition, at 48. The affidavits of Diallo and Ramu McClellan are undated, so it is not known when they were first presented to the state courts. Calvin Guinn's affidavit is dated February 21, 2007, so it could not have been filed with the motion for relief from judgment. Also, Petitioner's own affidavit is dated June 27, 2007, well after the trial court denied his motions. Petitioner does not explain the delay in obtaining the affidavits.

Petitioner then retained present counsel, and counsel included the four affidavits with his application for leave to appeal in the Michigan Court of Appeals. Petitioner also explicitly sough a remand for an evidentiary hearing to develop a factual record for his claims. These requests were repeated in his application for leave to appeal filed in the Michigan Supreme Court. While it is true that Petitioner apparently did not provide affidavits to the trial court in support of his motion for relief from judgment, he was not seeking a hearing to engage in a "fishing expedition" but was naming specific eye-witnesses who should have been called at trial, and he was alleging that their testimony would have supported his self-defense claim.

In sum, Petitioner took the following steps to develop the state court factual record regarding his claims: He alerted his appellate counsel during his appeal of right of the potential for raising a claim regarding the missing witnesses and specifically named Guinn as a person who should have testified. He then filed a motion for relief from judgment in the trial court raising these same claims and specifically asked for a hearing. After the trial court denied his motion for relief from judgment, he retained counsel who filed an application for leave to appeal in the Michigan Court of Appeals that was supported by affidavits and requested an evidentiary hearing. The request was then made to the

12

Michigan Supreme Court.

The only explained order denying Petitioner post-conviction relief stated that "the decision of what witnesses to call at trial *is* legal strategy." Trial Court Opinion, at 2 (emphasis added). The trial court went on to reason that "any actions by defense counsel which *can be* attributed to legal strategy, *will not be* grounds for ineffective assistance of counsel." Id., at 2 (emphasis added). It therefore appears that the trial court may have denied Petitioner relief without testing his claims at a hearing because it believed that, as a matter of law, the failure to call a witness cannot constitute ineffective assistance of counsel. This ground for summarily denying a claim when the facts are in dispute amounted to an obviously fundamental oversimplification of the law, and it frustrated Petitioner's otherwise diligent request for a hearing. Even assuming there was a strategic decision made not to call the witnesses - and the record is silent on that point as well - that decision might nevertheless have been unreasonable and might have constituted ineffective assistance of counsel. *See, e.g., Parrish Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

By his actions, Petitioner provided the state courts "the first opportunity to review [these] claim and provide any necessary relief." *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Petitioner appears to have made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in the state courts. He alerted his appellate counsel of the factual basis for the claim, and then on state collateral review he requested a hearing at every stage. The Court concludes that Petitioner diligently sought to develop the factual record for these claims in state court and that he is not barred by § 2254(e)(2) from receiving a hearing in this Court.

### III. Conclusion

The Court concludes that Petitioner was diligent in his attempt to develop the factual record in state court and that his factual allegations, if correct, may establish a constitutional violation. Thus, Petitioner has satisfied the prerequisites for an evidentiary hearing.

Accordingly, IT IS ORDERED that an evidentiary hearing shall be conducted in this matter at such date, time and location as that indicated on the attached notice of hearing. The evidentiary hearing shall be limited to Petitioner's ineffective assistance of trial and appellate counsel claims.


S/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
DATED: 12/9/10    UNITED STATES DISTRICT JUDGE